UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 83-541 |
| DAVID L. SNODDY, ET AL. | SECTION "N" |

# **ORDER & REASONS**

The Clerk of Court has custody of reel-to-reel tapes[1] which were pledged by defendant Donald E. Gilbreth ("Gilbreth") in 1984 as security for the $500,000 appearance bonds of Gilbreth and his co-defendant, David L. Snoddy ("Snoddy"), in the above-captioned criminal action.[2] After the defendants lost their appeals and reported to prison to serve their prison terms, District Judge Robert F. Collins canceled the appearance bonds and the pledge of the tapes and ordered the tapes returned to Gilbreth in 1986; approximately one month later in a supplemental order, Judge Collins ordered the tapes returned to Gilbreth's attorney, Michael S. Fawer ("Fawer"). (Docs. 343 and 345). A receipt signed by Fawer and former Deputy Clerk, Joyce A. Giliberto indicates that the Clerk of Court for the Eastern District of Louisiana, Loretta G. White, returned

---

[1] The record indicates that defendant Gilbreth represented that the tapes were Master Tapes of country singer George Jones, and that he was the sole owner of the tapes and had the legal capacity to pledge them. In support of these representations, Gilbreth, through his counsel of record, Michael Fawer, introduced into evidence a number of documents establishing the ownership of and the value of the Master Tapes. (Docs. 226, 244, 268-269, and attachments thereto).

[2] For a more detailed description of the relevant factual and procedural background, *see generally* Doc. 397.

five master tapes to Fawer on September 11, 1986. Nevertheless, as of the present date, tapes remain in the custody of the Clerk of Court which appear to be the very tapes pledged by Gilbreth in 1984.[3]

The tapes were discovered in the safe deposit box assigned to the Clerk of Court at the Whitney Bank, Poydras Street Branch, by Clerk's Office personnel, sometime after the retirement of the previous Clerk of Court. After the discovery of the tapes, the Clerk's Office made efforts to locate Gilbreth. Public records research indicated that Gilbreth died in 2005.

Because the whereabouts of Gilbreth were unknown to the Court, on July 21, 2016, the undersigned Chief Judge appointed counsel, A. Gregory Grimsal ("Grimsal"), to represent Gilbreth as an absentee defendant and either confirm his death, locate him, or identify his heirs and/or estate representatives so that they could be notified of the deadline to file a claim of entitlement to the tapes. The Court also directed the Clerk to notify certain parties known to have been involved in the underlying criminal action of the fact that the tapes remained in the Clerk's custody and of deadline for filing any claims of entitlement to the tapes. (Doc. 397).

The Court ordered that any person claiming ownership of and legal entitlement to the return of the pledged tapes file a motion and claim setting forth the nature and extent of their right and interest in the property on or before January 18, 2017. (Doc. 397). The deadline for filing such claims was subsequently extended to April 18, 2017. (Doc. 408).

---

[3] At the time the tapes were received by the Court as security for the appearance bond, August 3, 1984, Magistrate Ronald A. Fonseca made a note in the record that the tapes that were provided were not played for the court and the representations as to what is contained on the tapes were not verified. Doc. 269, p. 15. To the best of the Court's knowledge, the tapes have, to date, not been played by any court personnel since the tapes were pledged by Gilbreth and deposited with the Court.

1. **Report of Appointed Counsel regarding Donald Gilbreth**

On March 23, 2017, counsel for absentee defendant Gilbreth filed a report describing the efforts made to locate him or his heirs or estate representatives and to notify them of the instant proceedings instituted to return the pledged property. (Doc. 409). As set forth in detail in the report, counsel located Gilbreth's brother, Ruble Gilbreth ("Ruble"), who resided in Big Sandy, Tennessee, and learned from Ruble that Gilbreth died on July 17, 2005, in Memphis, Tennessee. Attached to counsel's report is a certified copy of the Certificate of Death of one Donald Evans Gilbreth indicating that at the time of his death, Gilbreth was married to Janis Ezell Collett ("Collett"). Ruble also indicated that while Gilbreth had no children with Collett, he had four children, three with a prior spouse and a son with another woman, but he could not provide their names, addresses, or any other information about them.

Through efforts described in the report, appointed counsel located Collett, who resides in Killeen, Alabama. Collett indicated that she knew that Gilbreth had three children with a prior spouse, but other than indicating that they had been adopted by their step-father and that the last name of the sons may be McLaurin, she could not locate them. Collett indicated that Gilbreth did not have a will and that at the time she was contacted by appointed counsel, no legal process had been instituted to distribute his assets.

Appointed counsel's independent investigation did not reveal that any probate proceedings for Gilbreth's estate had been commenced prior to the time he located Collett.

Appointed counsel was able to determine that, prior to marrying Collett, Gilbreth had been married to Jean Miree Yuille ("Yuille") who resided in Florence, Alabama. An online obituary indicated that she died on August 3, 2014. The obituary indicated that Yuille was survived by a son, William T. Yuille.

Appointed counsel arranged for the below listed advertisement to be published in the legal notices sections of the (1) *Times Daily* (Florence, Alabama); (2) *Sun Herald* (Biloxi, Mississippi); (3) *Daily News* (Memphis, Tennessee); (4) *Tennessean* (Nashville, Tennessee), and (5) *Times-Picayune* (New Orleans, Louisiana):

> If you believe you are or may be a potential heir to the estate of Donald Evans Gilbreth, you may be entitled to certain property currently in the custody of the United States District Court for the Eastern District of Louisiana in New Orleans, Louisiana. All potential claimants must file a motion asserting their claim to the property in this action entitled *United States v. David L. Snoddy and Donald E. Gilbreth*, Criminal Action No. 83-541, on or before **April 18, 2017**. For more information, please contact A. Gregory Grimsal or Alex B. Rothenberg at Gordon, Arata, McCollam, Duplantis & Eagan, LLC, 201 St. Charles Ave., Floor 40, New Orleans, Louisiana 70170, 504-582-1111.

William Yuille, III, called appointed counsel to inquire about the advertisement in the *Times Daily* in Florence, Alabama. He indicated that he was Jean Yuille's son and Donald Gilbreth's step-son, that his mother and Gilbreth had no children together, and that he did not know the names or contact information of Gilbreth's biological children. He confirmed that Jean Yuille had passed away.

On March 6, 2017, appointed counsel sent written notification of the pendency of the proceedings and the claims filing deadline by certified U.S. Mail to William Yuille, III, Ruble Gilbreth, and Janis Collett. As noted, pursuant to the Court's direction, the Clerk's Office sent notification of the claims deadline to the United States Attorney and Chief United States Probation Officer, as well as co-defendant Snoddy and Michael S. Fawer, who served in the criminal action as counsel for Gilbreth and Snoddy. (*See* Rec. Doc. 397).

**2.     Claims**

On or before the claims deadline, April 18, 2017, the following three claims were filed:

### A. Janis Collett

Appearing through counsel, Janis Collett, widow of Donald Gilbreth, filed a motion to seek possession and claim as the putative representative of the Estate of Donald Gilbreth. (Doc. 412). Collett asserted that she is entitled to seek possession of the tapes currently in the custody of the Clerk of Court. In the memorandum in support of her motion, Collett represents that she married Gilbreth on March 18, 1994, in Corinth, Mississippi, and that she remained married to him until he died in Shelby County, Tennessee on July 17, 2005. (Doc. 412-1). She states that no children were born of their marriage and that although she is aware that Gilbreth was the biological father of a number of children, her belief is that their legal rights as heirs have been terminated by adoption.

Collett indicated that she has "begun the necessary process under the laws of the state of Tennessee to open the necessary probate proceedings so that she may become a judicially recognized representative of the Estate of Donald Gilbreth." (Doc. 412-1, p. 2). To date, Collett has not submitted any documents evidencing her appointment as a representative of the estate of Donald Gilbreth. She has likewise not submitted a judgment of possession or other documents from a court of competent jurisdiction of the estate of Donald Gilbreth indicating that she is the owner of the tapes and that she is entitled to possession of them.

### B. William Lewis Yuille, III

William Lewis Yuille, III, appearing pro se, has filed a motion and claim of ownership of the tapes pledged by Gilbreth to secure his appearance at trial. (Doc. 410). Yuille states that his biological mother, Jean Miree Yuille, was lawfully married to Gilbreth for approximately 30 years and that they divorced in December, 1992, in Alabama. Yuille represents that Gilbreth was Yuille's step-father and that he asserts that while he recalls that Gilbreth mentioned the tapes, he

5

did not think Gilbreth knew where the tapes were and/or realized that he had a right to their return in 1986 or in 1992. He states that the tapes were property of the marriage of Gilbreth and his mother, Jean Miree Yuille, according to the laws of Alabama, but they were withheld from distribution to her.

Yuille asserts that his mother died on August 3, 2014, in Alabama, and left a Last Will and Testament. Her will provided that the all of her property was to be divided between him and his sister, Cynthia A. Hammond, unless either child predeceased Jean Miree Yuille; in the event one of her children pre-deceased her, Yuille states that his mother's will provided that the surviving sibling would inherit all of his mother's property. Yuille states that his sister, Cynthia A. Hammond died on October 26, 2012, predeceasing their mother, Jean Miree Yuille.

Based upon the provisions of his mother's will, Yuille asserts that he is the executor of his mother's estate and has the sole power to receive and distribute the property of her estate. He states that the tapes were the property of Jean Miree Yuille in 1992, at the time of her divorce from Donald E. Gilbreth. Because Gilbreth died on July 17, 2005, and Yuille is the sole heir of his mother, Jean Miree Yuille, Yuille contends that the tapes should be returned to him.

In support of his claim, Yuille attached the Last Will and Testament of Jean Miree Yuille, executed on September 7, 2001 (Doc. 410-1 SEALED, pp. 3-6) (marked "Exhibit A"), along with the State of Alabama Certificate of Death of Jean Miree Yuille, indicating that she died on August 3, 2014, in Florence, Alabama (marked "Exhibit B"), and the State of Alabama Certificate of Death of Cynthia Ann Hammond, indicating that she died on October 26, 2012 in Florence, Alabama (marked "Exhibit C").

6

Yuille did not indicate that he had sought or received a judgment of possession or other document evidencing his right to ownership and possession of the tapes from a court of competent jurisdiction of either Jean Miree Gilbreth's estate or Donald Gilbreth's estate.

**C.     David L. Snoddy and World-Wide Records, Inc.**

David L. Snoddy and World-Wide Records, Inc., appearing through counsel, filed a motion and claim for return of the tapes pledged as collateral for the bonds of Donald E. Gilbreth and David L. Snoddy. (Doc. 411). In their motion, they assert that although the record documents indicate that five tapes were pledged and delivered to the Court as collateral, it is possible that up to six tapes may have been provided to the court. They also allege that at some point, one or more tapes were returned to Michael Fawer, counsel for Gilbreth and Snoddy.[4] (Doc. 411, p. 1). They assert that a sixth master tape, one entitled "George Jones Sings Hank Williams," referred to in Gilbreth's August 3, 1984 affidavit, is owned by World-Wide Records, Inc., and that it may or may not be in the custody of the Court, as court records indicate that only five tapes were received by this Court.

In support of his claim that he is owner of the tapes, Snoddy alleges that he and Gilbreth were business partners in a variety of business ventures and that they split all assets and profits of those ventures equally. (Doc. 411, p. 4). Conceding that he "does not have a written contract documenting his joint ownership of the tapes at issue," Snoddy bases his assertion on the existence of a verbal partnership agreement he had with Gilbreth made in the early 1980s. In support his

---

[4] It is not clear which tape Snoddy is contending Fawer received or at what point he received one of the tapes. Although Fawer did submit an affidavit in connection with Snoddy's claim, Fawer does not state why he signed a receipt in 1986 indicating that he received the tapes when he did not or why he did not retrieve the tapes in 1986 when Judge Collins ordered them to be returned to their owner (or owners).

7

joint ownership claim, Snoddy attaches the affidavit of David A. Johnson, who states that he is a friend of David Snoddy; that in 1983, Donald Gilbreth brought various George Jones master tapes to Broadway Sound Recording Studio and that when Johnson asked him if he owned the tapes, Gilbreth said he and Snoddy owned them; and that the one George Jones Master that was owned by World Wide Records had ten songs on it, and that World-Wide Records agreed to pledge the album as security for the appearance bonds of Gilbreth and Snoddy. (Doc. 411-1, p. 30) (Exhibit D).[5]

Snoddy also supports his claim with the April 17, 2017, affidavit of Michael S. Fawer, the attorney who represented both him and Gilbreth in the above captioned matter. Fawer states under penalty of perjury that, "[i]n July 1984, at the time the George Jones master tapes were proffered as collateral for Mr. Gilbreth and Mr. Snoddy, I was advised by both my clients that they jointly owned the master tapes" and that "[b]ased upon the convoluted history of the ownership of the master tapes, an affidavit was executed by Mr. Gilbreth confirming that he was the sole owner of the tapes to avoid complicating the bond proceeding." (Doc. 411-1, p. 37) (Exhibit E).

Although he acknowledges that he is THE *joint* and not sole owner of the tapes, Snoddy does not state that he has submitted any claim to a court of competent jurisdiction of the Estate of Donald E. Gilbreth seeking possession of the tapes or asserting his alleged ownership rights.

    **3.    Discussion**

The court accepted the tapes as collateral to secure the appearance bonds of Gilbreth and Snoddy pursuant to Federal Rule of Criminal Procedure 45. All collateral for appearance bonds

---

[5] This is the sixth tape which, by Snoddy's own admission, court records do not indicate is in the court's custody.

is held by the Clerk of Court subject to the administrative procedures of the United States Courts as contained in the *Guide to Judiciary Policy*, Volume 13, Chap. 3, § 320.35.50(c) and (e). In compliance with those procedures, the Clerk stored the non-cash collateral in a safety deposit box in a bank vault. *Id.*

In accordance with its duty to inquire as to the ownership of the bond and provide notice to the defendant and to the third party to whom the Clerk's receipt indicated was to receive the bond upon disposition of the case, the Court directed the Clerk to provide notice to both defendants and defense counsel that the tapes, which had previously been ordered returned, were still in the Clerk's custody and must be returned to their owner. *United States v. Bursey*, 515 F.2d 1228, 1231-1232, 1238 (5th Cir. 1975).

This Court's duty is to return the pledged property remaining in the Clerk's custody to its legal owner; if the owner is deceased, the property must be delivered to the individual who has been recognized by a court of competent jurisdiction over the property to be entitled to possession.[6] All the record evidence, which was uncontested at the time it was admitted, supports a finding that Donald Gilbreth was the sole owner of the tapes when they were pledged. Gilbreth died in 2005 and there is no indication that he transferred ownership of the tapes after he pledged them in 1984, so they are property of his estate. The *Guide to Judiciary Policy*'s administrative procedures specifies that when a decedent's estate seeks the return of property held by the Clerk of Court, the estate must provide proof of identity of the owner of record, proof of personal identity of the estate administrator, and certified copies of probate documents establishing the estate representative's

---

[6] If a protracted legal dispute ensues over entitlement to possession, the probate court may appoint an estate representative to take possession of the tapes and to preserve them until a judgment of possession and ownership is rendered.

9

right to act on behalf of the decedent's estate or to receive the property in order for the representative to receive the property. *Guide*, Volume 13, Chapter 10, § 1020.50(d)(3).

As of the current date, none of the claimants have provided certified copies of documents from a court of competent jurisdiction over the estate of Donald Gilbreth establishing entitlement to either possession of the tapes or the right to act on behalf of the decedent's estate as its representative.

Although Snoddy now contends in his claim that he is a joint owner of the tapes based upon multiple verbal agreements that made him an equal co-owner to all of pledged tapes, he does not offer any explanation for his failure to assert an ownership interest in the tapes in 1984 when they were pledged to secure his and Gilbreth's appearance bonds. Since the pledge of the tapes benefitted Snoddy by securing his bond and allowing him to be released, it is difficult to understand why Snoddy would have remained silent about his ownership interest in tapes with sufficient worth to secure two $500,000 appearance bonds. Nor does he explain why he never sought the return of the tapes in 1986 when he reported to prison to serve his sentence, or at any time subsequent thereto until he learned that the tapes were still in the Clerk's custody.

Fawer, who represented both Gilbreth and Snoddy, has now submitted an affidavit attesting that in July, 1984, at the time of the hearing before Magistrate Fonseca at which the sufficiency of the bonds was at issue, he was advised by his clients that the tapes were jointly owned by both of them. He also states that Gilbreth intentionally signed, and swore under penalty of perjury, that he was the sole owner of the tapes to avoid complicating the bond proceeding. Fawer does not explain why he allowed this false information to be admitted into evidence at the July 31, 1984 hearing, why he submitted a pledge signed only by Gilbreth to secure the appearance bonds, or why he allowed Magistrate Fonseca to make a determination on the sufficiency of the bonds, which

were secured by a pledge of the George Jones master tapes estimated to be worth far more than the $1 million in bonds they were pledged to secure, based upon a false statement made by one of his clients to the detriment of the ownership interest of the other.

All evidence contemporaneously submitted to the court by Fawer at the time the tapes were pledged to secure the appearance bonds indicate that Gilbreth was the sole owner of the tapes and that he was entitled to their return when the bonds were cancelled. Snoddy does not dispute that Gilbreth is now deceased. Because Gilbreth's property is part of his estate, Snoddy's claim of a joint ownership interest in the tapes is to be asserted in a court of competent jurisdiction over Gilbreth's estate against the ownership claims of Gilbreth's heirs.

**4.     Conclusion**

Because there is conclusive proof that Donald E. Gilbreth is deceased, the tapes are the property of the estate of Gilbreth and are subject to the rulings of the court having jurisdiction of the legal distribution of the property of Gilbreth's estate. None of the claimants have provided this Court with a certified copy of a decree of a court of competent jurisdiction of Gilbreth's estate establishing that the claimant is entitled to possession of the tapes or that the claimant has been designated estate representative with authority to represent the estate and possess and distribute its assets in accordance with the court's judgment. Accordingly,

**IT IS ORDERED** that on or before **TUESDAY, NOVEMBER 14, 2017,** any claimant seeking possession of the tapes presently in the custody of the Clerk as outlined herein provide this Court with a certified copy of a judgment of court of competent jurisdiction over the Estate of Donald E. Gilbreth establishing that the claimant has the right to the possession of the tapes.

If no claimant submits a certified copy of a judgment from a court of competent jurisdiction of the Estate of Donald E. Gilbreth by **TUESDAY, NOVEMBER 14, 2017**, the tapes will be

11

considered unclaimed property and handled in accordance with unclaimed property provisions established by the *Guide to Judiciary Policy.*

The above deadline may be extended by order if a claimant files a motion to extend the deadline and the Court determines that the movant has made substantial, timely efforts to obtain the requisite judgment and good cause establishes that the deadline should be extended.

New Orleans, Louisiana, this 13th day of July 2017.

_____
**KURT D. ENGELHARDT**
**CHIEF UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF LOUISIANA**